CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 0 9 2009

JOHN F. CORCORAN, CLERK
BY: /s/
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ANDRE K. WATERS, )
)
Petitioner, ) Case No. 7:08CV00555
)
v. )
) **MEMORANDUM OPINION**
)
WARDEN TERRY O'BRIEN, ) By: Glen E. Conrad
) United States District Judge
Respondent. )

This action, brought pro se as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] is now before the court for consideration of the report and recommendation submitted by United States Magistrate Judge Michael F. Urbanski in accordance with 28 U.S.C. § 636(b)(1). Petitioner Andre K. Waters has objected to the magistrate judge's report and recommendation. Upon de novo review of the record, the court concludes that Waters is not entitled to relief under § 2241.

## Background

As related in more detail in the Magistrate Judge's report, the relevant facts in this case are not disputed. In August 1996, Waters was indicted on federal charges of bank robbery and use of a firearm during a crime of violence, with all charges to be tried in the United States District Court for the Middle District of Tennessee. New York state authorities arrested Waters on August 14, 1997, related to charges of criminal use of a firearm in the first degree, attempted murder in the second degree, assault with intent to cause serious injury with a weapon, and attempted robbery in the first degree, for offenses which occurred on May 20, 1997.

---

[1] In his petition, Waters listed as respondents both the United States and Terry O'Brien, warden of the United States Penitentiary in Lee County, Virginia ("USP Lee"). Waters is currently confined at USP Lee, which is located within the territorial jurisdiction of this court. Accordingly, his claims regarding execution of his federal sentence are properly presented in a § 2241 petition in this court with the warden of USP Lee, Terry O'Brien, as respondent. See Rumsfeld v. Padilla, 542 U.S. 426, 434-45 (2004); United States v. Miller, 871 F.2d 488, 4990 (4th Cir. 1989) (finding that § 2241 petition is proper remedy for seeking credit against sentence for time served before trial). Therefore, the United States is not a proper party to this action.

Federal authorities obtained Waters from state authorities on January 13, 1998, via a writ of habeas corpus ad prosequendum, and transported him to Tennessee for trial on the federal charges. The United States District Court for the Middle District of Tennessee sentenced Waters on February 12, 1999 to 60 months imprisonment on each of the bank robbery counts, with the sentences to run concurrently to each other, and to 60 months imprisonment on the firearm offense, to run consecutively to all other sentences. Following sentencing, federal authorities returned Waters to state authorities on March 8, 1999, and the federal judgments were filed with state authorities as a detainer on April 26, 1999.

The state court in New York conducted a sentencing hearing on March 31, 1999. Waters' defense counsel stated to the court, "I rely on the promise [of seven and a half to fifteen years], but I know it is a little more complicated, as usual, insofar as he is in federal prison right now, as well. I have the number of the case in which he is serving the federal time, 3:96-00095." (Pet. Ex. C, 2-3.) The trial judge then pronounced: "The sentence of the Court is, as promised, seven and a half to fifteen years, that sentence to run concurrent with the federal sentence as referred to as case No. 3:96-00095." (Id. 3.) The sentencing minutes indicate that Waters was committed to the custody of the Department of Correctional Services of New York ("NYDOC"). On April 22, 1999, the NYDOC received Waters to begin service of his state sentence. The New York authorities paroled him from that state term on January 23, 2007. The United States Marshals Service ("USMS") received Waters into federal custody on January 24, 2007, for service of his federal sentences.

The Bureau of Prisons ("BOP") prepared a sentence computation for inmate Waters, commencing the total 120-month sentence on January 24, 2007, the date on which he was received into federal custody. The BOP also awarded Waters prior custody credit against the federal term in the amount of 39 days for the time periods between January 15 and 29, 1998, and February 12 through March 7, 1999, inasmuch as these periods during which he was in federal custody were not credited to his state court sentence.

Pursuant to its discretionary authority under 18 U.S.C. § 3621(b) to designate the facility where a federal inmate will serve his sentence, the BOP National Inmate Appeals Department considered whether a <u>nunc pro tunc</u> designation to the New York Department of Corrections would be appropriate in Waters' case so as to effectuate the concurrent service of his state and federal sentences as intended by the state court. Upon completing its consideration of Waters' case, BOP staff notified him on May 7, 2008, that no <u>nunc pro tunc</u> designation would be granted. In support of this decision, staff cited several reasons, including: the nature of his federal offenses, in which he robbed two different banks, brandishing a firearm and pointing it at bank employees; the nature of his state charges, arising from an incident in which he committed armed robbery of a store and shot an employee; the fact that he had multiple, serious prison disciplinary convictions; the fact that, despite being contacted by the BOP, the state sentencing judge had not responded with any statement in favor of granting a <u>nunc pro tunc</u> designation regarding Waters' federal term of confinement; and the statutory requirement under 18 U.S.C. § 924(c)(1) that his 60-month sentence on the firearm charge run consecutive to other sentences.

Waters filed this § 2241 petition in October 2008. In his pleadings, he alleged that (1) his federal sentence commenced on February 12, 1999, the date of sentencing, and the United States Marshals Service ("USMS") illegally interrupted his federal sentence by returning him to state authorities on March 8, 1999; (2) he should get pretrial credit against his federal sentence from January 13, 1998 until February 11, 1999 (when state authorities released him to federal authorities pursuant to the writ of habeas corpus ad prosequendum); and (3) federal authorities erred in not taking Waters to federal prison after he was sentenced on the state charges. The warden filed a motion to dismiss, and Waters responded. The court requested additional briefing and documentation as to whether Waters had been designated to begin serving his federal sentence at some point between February 12 and March 8, 1999. On May 11, 2009, the court referred the case to the magistrate judge, pursuant to § 636(b)(1). The magistrate judge issued his report on June 23, 2009, as required under 28 U.S.C. § 636(b)(1)(C), recommending that the

- 3 -

petition be dismissed. Waters filed timely objections. The court has conducted a de novo review of the record.

## Discussion

When an inmate has sentences imposed by federal and state authorities, the sovereign that arrested him first acquires and maintains primary jurisdiction over him until the sentence imposed by that sovereign has been satisfied. United States. v. Evans, 159 F.3d 908, 912 (4th Cir. 1998) (restating this principle of primary jurisdiction as set out in Ponzi v. Fessenden, 258 U.S. 254, 260 (1922)). When a state has primary jurisdiction over the defendant, issuance of a detainer or a writ of habeas corpus ad prosequendum by federal authorities does not change the defendant's primary jurisdiction status. Thomas v. Whalen, 962 F.2d 358, 358-60 (4th Cir. 1992). A writ of habeas corpus ad prosequendum specifically recognizes the state's primary jurisdiction, the intention of the federal authorities to "borrow" the defendant for court proceedings, and their obligation to return the defendant to state custody to complete his state sentence. Id. at 358 n.3 (citing other cases).

Once the district court has imposed an inmate's federal criminal sentence, the United States Attorney General, through the BOP as that official's delegate, is responsible for calculating the inmate's term of confinement, including determination of the appropriate credit to be granted for jail time served before sentencing. See United States v. Wilson, 503 U.S. 329, 334 (1992). A federal sentence commences "on the date when the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Where a state has primary jurisdiction over the defendant, federal custody under the federal criminal sentence "commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Evans, 159 F.3d at 912. One exception to this rule exists: "When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence."

Id. at 911-12 (citing Barden v. Keohane, 921 F.2d 476, 481-82 (3d Cir.1990); 18 U.S.C. § 3621(b) (vesting designation authority and discretion in the Bureau of Prisons)).

In some circumstances, the BOP also grants inmates credit against their federal sentences for time served before the federal sentence was imposed. However, prior custody credit cannot be granted against a federal criminal sentence for any period of time for which petitioner has received credit toward another sentence, state or federal. See 18 U.S.C. § 3585(b); United States v. Wilson, 503 U.S. 329, 337 (1992).

Applying these principles to the facts in evidence, the court concludes that Waters' federal sentence has been properly computed. Therefore, the court will adopt the magistrate judge's recommendation that the § 2241 petition be dismissed, on somewhat different reasoning.

First, although the federal indictments against Waters in Tennessee issued before the state charges in New York, state authorities obtained primary jurisdiction over Waters when they arrested him on August 14, 1997 and continued to detain him on the state charges. This status did not change when federal authorities removed Waters from the state prison facility on January 13, 1998, pursuant to a writ of habeas corpus ad prosequendum, for transport to Tennessee for his federal trial and sentencing. Under the writ, federal authorities only "borrowed" Waters for purposes of adjudicating his federal charges and remained obligated to return him to New York thereafter, in respect for New York's primary jurisdiction. Thomas, 962 F.2d at 358 n.3.

Second, the imposition of the federal judgment on February 12, 1999 did not trigger a change in primary jurisdiction over Waters.[2] The federal court's pronouncement of sentence and entry of the written federal judgment merely stated the penalty Waters would face in federal prison once he completed his obligations to New York. The BOP, not the court, had the authority to determine when Waters' federal term of confinement could commence. Wilson, 503

---

[2] Waters argues that the federal court acquired primary jurisdiction over him, pursuant to language on the face of the judgment indicating that "[t]he defendant is hereby committed to the custody of the [BOP] to be imprisoned for a total term of [120] months." (Pet. Ex. A, 2.)

Case 7:08-cv-00555-GEC-mfu Document 19 Filed 07/09/09 Page 5 of 9 Pageid#: 190

U.S. at 334 (noting that at sentencing, the court "only could have speculated about the amount of time that [the defendant] would spend in detention prior to the commencement of his sentence; the court did not know when the state-court proceedings would end or when the federal authorities would take [the defendant] into custody").

Third, the record offers no support for Waters' allegation that federal authorities wrongfully interrupted his service of the federal sentence by returning him to state custody on March 8, 1999.[3] Because federal authorities had "borrowed" Waters from the state pursuant to a writ, they were obligated to return him once the federal sentence was imposed on February 12, 1999, and the federal sentence could not commence at that time. The process of transferring him from Tennessee back to New York entailed transporting him through other states and housing him in several facilities until New York authorities could finally resume physical custody of him on March 8, 1999. (See Report, 3-4.) Although a BOP staff member requested that Waters be designated to a federal prison during this period, the request was erroneous and, accordingly, was not granted, because New York maintained primary jurisdiction over Waters. Thus, his federal sentence did not commence before he was returned to state authorities in March 1999.

Fourth, imposition of the state sentence as concurrent to the federal sentence did not accomplish a change of primary jurisdiction. Even assuming that the state court imposed the concurrent sentence on March 31, 1999 with the intention of relinquishing primary jurisdiction, the record offers no evidence that state authorities took the necessary steps to effectuate this intended change. State authorities could have designated a federal prison facility as the place where Waters would serve his concurrent state sentence and then returned Waters to the physical custody of the United States authorities. Nothing in the record indicates that such actions

---

[3] As explained in the magistrate judge's report, Waters' case is clearly distinguishable from the "sentence interruption" cases that he cites in support of this claim: Weekes v. Fleming, 301 F.3d 1175 (10th Cir. 2002); Luther v. Vanyur, 14 F. Supp.2d 773 (E.D.N.C. 1997). (See Report, 8-9.) In these cases, both state and federal authorities took actions that indicated prolonged confusion regarding who had primary jurisdiction over the defendant, which the courts interpreted as implicit agreement to transfer primary jurisdiction. (Id.) The record in Waters' case does not indicate that federal authorities took any action inconsistent with the state's continuing primary jurisdiction over the defendant.

Case 7:08-cv-00555-GEC-mfu   Document 19   Filed 07/09/09   Page 6 of 9   Pageid#: 191

occurred. Instead, on April 22, 1999, Waters was delivered to a state prison facility. The federal authorities further recognized the state's continuing primary jurisdiction by lodging the federal judgment as a detainer against Waters on or about April 26, 1999. (Pet. Ex. D.)[4]

Thus, contrary to Waters' assertions that the USMS erred in failing to return him to federal prison after his state sentencing, it was state officials who failed to take the steps necessary for Waters to serve his state sentence concurrently with the federal sentence. Waters was not without remedy to correct this error. He could have filed a petition for a writ of habeas corpus in the state court, asserting a claim that his state sentence was not being executed in the manner that the sentencing judge intended. In the event that a state <u>habeas</u> petition was unsuccessful in obtaining relief, he could then have pursued a similar claim in the federal district court in New York, pursuant to 28 U.S.C. § 2254. As he has already served his term of confinement on the state sentence, however, there is no remedy that this court can provide regarding the errors in execution of his state sentence.

The BOP could have granted a <u>nunc pro tunc</u> designation pursuant to § 3621(b) to allow Waters to receive credit against his federal sentence for the time he served in state custody between imposition of the federal sentence on February 12, 1999, and parole from the state sentence on January 23, 2007. BOP officials have plenary discretion under § 3621(b) to determine, based on a number of factors, whether or not to grant a <u>nunc pro tunc</u> designation. While a concurrent state sentence is one factor that the BOP must consider under § 3621(b), the state court's intent is not binding on federal authorities or the BOP. <u>Barden</u>, 921 F.2d at 478 n. 4. Furthermore, where it is clear that BOP officials considered the relevant factors under § 3621(b) in reaching their decision to deny a <u>nunc pro tunc</u> designation, the court's review of that action is

---

[4] Waters is under the impression that Exhibit D to his petition proves that after his state sentence was imposed, state officials notified federal authorities to come and assume custody of him to serve his concurrent state and federal sentences in federal prison. He is mistaken. Exhibit D is a notice from the NYDOC to the USMS in New York, dated April 26, 1999, indicating that a federal detainer based on the February 12, 1999 judgment was lodged against Waters and that federal authorities would be notified prior to his release from his state sentence.

- 7 -

Case 7:08-cv-00555-GEC-mfu    Document 19    Filed 07/09/09    Page 7 of 9    Pageid#: 192

limited to abuse of discretion. Id. at 478; Trowell v. Beeler, 135 Fed. App'x 590, 592 (4th Cir. 2005) (unpublished); Abdul-Malik v. Hawk-Sawyer, 403 F.3d 72, 75-76 (2d Cir. 2005) (citing other cases). Waters does not demonstrate that BOP staff failed to consider all required factors under § 3621(b)(1)-(5). Furthermore, documentation in the record indicates that BOP staff denied Waters a nunc pro tunc designation for several reasons in combination. (See Background, supra.) The court cannot find that this thoughtful determination constituted an abuse of discretion and so cannot grant Waters any relief under § 2241 regarding the BOP's decision.

Finally, Waters is simply mistaken in his assertion that he is entitled to any additional prior custody credit for time served before imposition of his federal sentence on February 12, 1999. It is undisputed that he received credit against his state sentence for the majority of this time period and that he has already received federal credit for the days that the state did not credit him. Pursuant to § 3585(a), he may not receive any federal credit for presentence time served if he has already received credit against another sentence.

## Conclusion

For the stated reasons, the court concludes that Waters is not entitled to relief under § 2241. The court will adopt the magistrate judge's recommendation that the case be dismissed, for reasons herein stated. An appropriate order will issue this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United

States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and counsel of record for the respondent.

ENTER: This 9th day of July, 2009.

*[signature]*
United States District Judge